WILLIAM D. COOK, Respondent, *v.* THE VILLAGE OF, MOHAWK, Appellant.

Municipal corporations — flooding of premises caused by obstruction of watercourse — action for damages caused thereby — evidence — erroneous admission of declarations made by village officer that the village would pay for damages caused by the water — erroneous admission of evidence to show that mental sufferings of plaintiff's wife, caused by the flooding of the premises, aggravated a disease with which she was afflicted.

1. In an action against a municipality for wrongfully causing the discharge of water upon the plaintiff's premises, causing damage thereto and injuriously affecting the health of his wife who was an occupant thereof, it is error to permit the plaintiff, in showing that the defendant's sidewalk committee had notice of the condition, to prove a declaration made by a member of that committee to the effect that the defendant would pay for any damage caused by the water.

2. Nor is it competent in such a case for the plaintiff to prove that the flooding of the premises aggravated the emotional or mental suffering of the wife who was afflicted at the time with a serious bodily ailment, since the defendant should not be held liable for the mental or nervous disturbance of plaintiff's wife due to a cause entirely separate from the flooding of plaintiff's premises.

3. Mental suffering is not a legal element of damages in such cases, and there can be no recovery except for physical ills which can be ascribed directly and with reasonable certainty to the defendant's wrongful act.

*Cook* v. *Village of Mohawk*, 143 App. Div. 961, reversed.

(Argued January 16, 1913; decided February 4, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 23, 1911, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Bell* and *J. E. Rafter* for appellant. It was error to allow plaintiff to give conversation with Trustee Reno. (*Hungerford* v. *Village of Waverly*, 125 App. Div. 311.) It was error to allow Dr. Brooks to describe the condition of plaintiff's wife. (*People* v. *Corey*, 148 N. Y. 488; *Austin* v. *Bartlett*, 178 N. Y. 315.)

*A. B. Steele* for respondent. It was proper to prove by Dr. Brooks the condition of plaintiff's wife to show that she was not able to work. (*Anchor Brewing Co.* v. *Dobbs Ferry*, 84 Hun, 274; 156 N. Y. 695; *Acker* v. *Town of Newcastle*, 48 Hun, 312.)

Werner, J. For the purposes of this discussion we shall assume that there was evidence enough to create a question of fact under the allegations of the complaint, charging that the defendant had wrongfully obstructed a natural waterway in such manner as to discharge its waters upon plaintiff's lands, causing damage thereto and affecting the health of plaintiff's wife, who was one of the occupants. The issues framed by the pleadings were submitted to the jury in a charge to which no exception was taken, and the plaintiff was given a verdict of $1,000 upon which judgment was entered. At the Appellate Division three of the justices were for reversal of the judgment unless the plaintiff should stipulate to reduce his recovery to the sum of $500 damages, in which event they were for affirmance; and two of the justices were for an unqualified reversal. The plaintiff stipulated that his judgment might be thus reduced, and it was thereupon affirmed. As no opinion was written at the Appellate Division, we are not advised of the grounds upon which the two dissenting justices placed their votes for reversal, and we can only surmise that it must have been because of errors on the admission of evidence, which we regard as too serious to overlook even in a case where the judgment, as reduced, is concededly within the bounds of the competent evidence.

The first of these errors was committed in permitting the plaintiff to testify to certain declarations by one Keno, a member of defendant's sidewalk committee. The primary purpose of the plaintiff's testimony as to his interview with this committee was to show that the defendant, through its officials, had notice of the conditions upon which the plaintiff bases his claim to damages. To that extent it was not properly subject to objection. The witness did not stop there, however, but went on to testify that Keno said: "We will clean out Minnow Creek and stop the water from coming down that way. Any damage created on that street or anywhere else by water the village board will pay for." Keno had no authority to make any such statement, and it could not bind the defendant. The objection to the testimony clearly pointed out its vice, and the court should not have permitted it to remain on the record. It was one thing to permit the plaintiff to show that the sidewalk committee had been informed that the plaintiff's premises were being flooded; but it was quite another thing to prove that a member of the committee said that the defendant would pay the damages.

Even more distinctly erroneous and harmful was a part of the evidence elicited from Dr. Brooks over the objections and exceptions of defendant's counsel. In the case of this witness the competent and incompetent testimony is so intermingled that it would be impossible to point out each instance of error without quoting the testimony at burdensome length. We shall, therefore, briefly state the general character of this evidence and illustrate its objectionable features by referring to a few specific questions and answers. One of the items of damage upon which plaintiff brought suit was the loss of his wife's services, owing to her alleged inability to do her usual work on account of illness caused by the flooding of plaintiff's premises. The wife's specific ailment seemed to be a "flowing" or hemorrhage due primarily to a

small fibroid tumor, which made her very nervous. Dr. Brooks was called in while the water was running into plaintiff's cellar, and in answer to the question, "Describe how she acted," he testified: "She was very flighty, practically hysterical, real hysterical. She says: 'Do you hear it? Do you hear it? It is coming right up.'" The witness stated that he heard the water coming in, and that was what made the plaintiff's wife hysterical and nervous and increased her "flowing." Again, at a later stage in the testimony this witness was asked: "Q. Now, what effect would it have on a party that had this fibroid, if there was water surrounding the house and running in the cellar, and you found her in a nervous condition?" Over the objection and exception of defendant's counsel the witness was permitted to answer: "The nervous condition would make her flow more."

We have quoted enough of this testimony to indicate that the element of emotional or mental suffering on the part of the wife was emphasized when it should have been excluded. The defendant should not be held liable for the mental or nervous disturbance of plaintiff's wife due to a cause entirely separate from the flooding of plaintiff's premises. The wife had a fibroid tumor. If this was responsible for a mental or nervous condition which made her unnecessarily apprehensive of the flooding of the land, and this increased her ailment, the defendant cannot be charged with the consequences. Mental suffering is not a legal element of damages in such cases (*Mitchell* v. *Rochester Ry. Co.*, 151 N. Y. 107, 110; *Hack* v. *Dady*, 142 App. Div. 510), and there can be no recovery except for physical ills which can be ascribed directly and with reasonable certainty to the defendant's wrongful act. It is quite evident that the jury were permitted to consider the mental as well as the physical condition of the plaintiff's wife, and this may have led to an utterly erroneous idea of the damage to be awarded. It is quite possible that the mistake in this regard is of little impor-

tance in this particular case, for the Appellate Division compelled a reduction of the verdict to a point below the actual damage which the plaintiff claimed for injury to his freehold and personal property, thus theoretically excluding altogether the plaintiff's claim for the loss of his wife's services. If the question concerned only the parties to this appeal, we might, in the interests of justice as between them, overlook the manifest errors which we have discussed. That is not the condition, however, for the errors are of such a character as to mislead other practitioners who, from an abundance of caution, consult our records on appeals for the very purpose of avoiding the pitfalls of practice. One of the principal functions of an appellate court is to make the law as certain as possible by reducing to a minimum the errors in practice which may affect a class of cases or the general rules of evidence. This case belongs to a numerous class in which the rules of evidence must be safeguarded for the proper protection of municipalities.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK, CHASE, COLLIN and HOGAN, JJ., concur.

Judgment reversed, etc.