Mary Barnett, Appellee, v. Collection Service Company et al., Appellants.

No. 41307.

1304

April 5, 1932.

Rehearing Denied September 23, 1932.

E. A. Johnson and Chas. L. Benesh, for appellants.

Donnelly, Lynch, Anderson & Lynch and Walter R. Hutchinson, for appellee.

Faville, J.—Appellants conduct a collection agency in the city of Cedar Rapids. Appellee is a widow living with her two children, a son of sixteen and a daughter of eighteen. She was employed in a dry goods store in Cedar Rapids as a clerk and saleslady. The appellants knew that she was a widow living with said children, and that the wages which she earned were exempt to her. She became indebted to a coal company in the sum of $28.75. The appellants had said claim for collection, and in attempting to collect the same wrote a series of letters to the appellee. It is unnecessary that we set out the contents of said letters in this opinion.

It is frankly conceded by counsel for appellants "that the form letters sent to the plaintiff [appellee] might have been couched in a little more diplomatic and tender language." This is undoubtedly true. The letters were coarse, and a jury could readily find that they were vindictive. They contained threats of various kinds as to what the appellants would do in the event

that the appellee did not pay said claim. None of these threats had reference to physical violence or injury. The letters contained threats to sue, to appeal directly to appellee's employer, with the assurance that this would be successful, and "we will bother-him until he is so disgusted with you that he will throw you out the back door." And again: "You will settle in full your account with the above through this office within the next five days or we will tie you up tighter than a drum." There is also a suggestion that the appellee was as bad as a criminal, and other similar matters.

The only damages sought by the appellee are for mental pain, anguish, and humiliation which she claims she suffered by reason of receiving said series of letters written by the appellants. It is alleged by the appellee:

"That each and all of the acts of the defendants as hereinbefore alleged were done wilfully, maliciously and with the intent to extort from this plaintiff the payment of a claim which defendants knew could not be legally collected, and for the purpose of harassing, annoying, distressing, and worrying the plaintiff into the payment of same."

The evidence on behalf of the appellee tends to show that by reason of said letters she became nervous, and could not work, and could not rest; that she suffered mental pain and anguish; that she cried and was compelled to go to bed. The jury could have found that this condition was produced solely by the threats and other language of the letters. The evidence also tends to establish that after appellants were advised of the fact that the letters had affected appellee both mentally and physically they knowingly continued to send her other letters of the same character.

Appellants present but one proposition on this appeal, and that is the question as to whether or not, under the record, the appellee has pleaded and proven any cause of action against the appellants. The appellants do not complain of the size of the verdict, not of any rulings of the court except on the one question as to whether or not appellee has stated and proven a valid cause of action. This question was properly raised in the court below.

There have been a multitude of decisions of the various

courts on the question of damages for mental pain and suffering caused by fright or other emotional shock. A reconciliation of all of the cases is impossible. We have had a like question before us in various forms.

We first give consideration to our own decisions.

In Mahoney v. Dankwart, 108 Iowa 321, it was claimed by the plaintiff that the defendant negligently set off a certain blast near the home of the plaintiff, which threw fragments of earth and rock upon the house of the plaintiff and cast plaintiff into an extreme fright and nervous disorder. The evidence showed without dispute that the plaintiff's fright was caused, not by the blasting, but by what she saw of its effect, particularly in the frightening of the plaintiff's mother, and we held there could be no recovery.

In Lee v. City of Burlington, 113 Iowa 356, we considered a case where the action was brought to recover damages for the death of a horse, it being alleged that the horse became frightened at a steam roller negligently operated on the streets of the defendant city. In the course of the opinion we said:

"As a general rule, no recovery may be had for injuries resulting from fright caused by the negligence of another, where no immediate personal injury is received. This is the settled rule as to human beings." (Citing authorities.)

And we said:

"* * * we see no reason why the same rule should not be applied to animals."

We affirmed the ruling of the trial court in sustaining a demurrer to the petition.

In Watson v. Dilts, 116 Iowa 249, action was brought to recover damages for physical injuries produced by fright. It appeared in that case that the defendant wilfully and unlawfully came upon the premises occupied by the plaintiff and her husband, in the nighttime, entered the house, and stealthily went upstairs to the second story, and defendant and plaintiff's husband appeared to be in an encounter. The plaintiff became greatly terrified, suffered a nervous chill, and was prostrated, and suffered great mental pain and anguish and physical pain. We held that the petition setting up said facts stated a cause

of action, and that the demurrer thereto should have been over-ruled.

In Zabron v. Cunard Steamship Co., 151 Iowa 345, we considered a case where a ticket from Russia to the United States had been purchased in America for the plaintiff. The agents of the defendant company neglected to properly forward the ticket, and refused the plaintiff passage without said ticket. The plaintiff suffered delay and inconvenience and mental suffering because thereof. We said:

"We are of the opinion that this is not a case where recovery may be had for mental suffering, disconnected from physical impact or injury."

In Holdorf v. Holdorf, 185 Iowa 838, the plaintiff sued for damages caused by an alleged assault upon her by the defendant, which it was claimed resulted in a shock that produced a miscarriage. Defendant denied the assault and contended that plaintiff's injuries, if any, were due solely to fright. It appeared that the defendant approached the plaintiff in an angry manner and acted as if he were about to strike her, and offered to strike her. In discussing the question we recognized that the authorities were not in harmony, and said:

"The rule, however, denying liability for injuries resulting from fright caused by *negligence*, where no physical injury is shown, cannot be invoked where it is shown that fright was due to a *wilful* act." (Citing authorities.) (Writer's italics.)

It is to be noticed that in the case at bar the right to recover is not predicated upon negligence, and cases involving actions for injuries resulting from fright, where the fright was caused solely by the *negligence* of another, are not controlling under the facts of this case. It is also true that in this case there is no claim of any physical injury, nor of any attempt to commit a physical injury. There was no assault of any kind. It is alleged, however, and the jury could find from the evidence, that the appellants' acts were *wilful*, and were done for the express purpose of affecting the appellee mentally by harassing and annoying the appellee and causing her mental pain and anguish.

The case most strongly relied upon by appellants is Kramer

v. Ricksmeier, 159 Iowa 48. In that case the plaintiff sued for damages for bodily pain and mental anguish resulting from humiliation and shock caused by the defendant's using angry and threatening language over the telephone. A demurrer to the petition was sustained, and on appeal the case was affirmed. The petition alleged that in the absence of plaintiff's husband the defendant wilfully, maliciously, wantonly, and negligently called plaintiff to the telephone at her house, and in an angry manner made statements about the cattle belonging to plaintiff's husband that had broken out of their pen and were at large, and ordered her to take charge of said cattle at once; and plaintiff alleged that by reason of said acts she became greatly humiliated and shocked and suffered great pain and anxiety. The demurrer was based upon the general ground that no cause of action was stated, and that the alleged damages were speculative and remote. In this court the case was presented on the theory that the wrong charged in the petition was equivalent to an assault. We held that the petition could not be construed as alleging an assault, and that the damages were speculative and remote. There was no discussion of the distinction between negligent and wilful acts.

In the case of Holdorf v. Holdorf, supra, we recognized the distinction between injuries resulting from fright caused by *negligence,* where no physical injury is shown, and those where the fright was caused by a *wilful* act.

The same rule was also recognized in Watson v. Dilts, supra.

In the case at bar no negligent act is involved. The appellee was affected by mental shock caused by the alleged *wilful* conduct of the appellants. The jury could find under the evidence that the acts of the appellants were wilful and intentional and were committed for the express purpose of harassing and annoying the appellee mentally. We therefore have our problem reduced to the proposition as to whether or not recovery may be had in a case where the act is wilful, as distinguished from negligent, and where there was no physical injury and no assault, and where the plaintiff in the action did not suffer from fright, but from mental pain and anguish caused by the wilful act of the defendants.

The letters in question were not of the character denounced by the statute on blackmail, but they did contain threats of a

character which the jury could find would naturally produce mental pain and anguish. Whether or not the appellee justly owed the debt and should pay the same is not the question. Here was an act charged to be intentionally and wilfully done, for the express purpose of producing mental pain and anguish. Does this constitute a legal wrong, and is there a remedy therefor?

In Great Atlantic & Pacific Tea Co. v. Roch, 153 Atl. 22 (Md.), it appeared that the plaintiff in the action ordered and expected to receive from the defendant a loaf of bread. The agent for the defendant prepared a package containing a dead rat and sent it to the plaintiff, who opened the same, and as a result received a shock, and suffered physical and mental pain and anguish. It was held that there could be recovery for the injuries caused by the fright or shock suffered by the plaintiff. The act was wilful, and not merely negligent.

In Davidson v. Lee, 139 S. W. 904, the Court of Civil Appeals of Texas considered a case where a creditor unlawfully restrained in his room the person of the debtor, and by the use of a deadly weapon in a threatening manner, coupled with abusive language and a threat to kill, caused the debtor to suffer humiliation and fear for his personal safety. The court held that the defendant was liable for the mental suffering caused though no battery followed. The court said:

"The rule that damages cannot be recovered for mental suffering unaccompanied by physical injury is not applicable when the wrong complained of is a *willful* one intended by the wrongdoer to wound the feelings and produce mental anguish and suffering, or from which such result should be reasonably anticipated, as a natural consequence." (Writer's italics.)

In Nickerson v. Hodges, 84 So. 37 (La.), a suit was brought to recover damages for mental and physical suffering and humiliation by reason of deception and conspiracy with respect to the finding of a supposed pot of gold. The defendants prepared a pot containing dirt, and located the same so that the plaintiff, who was searching for a supposedly hidden pot of gold, would find it. Plaintiff found the prepared pot and opened it in the presence of a number of persons, and suffered serious mental pain and humiliation. Although a practical joke was intended by the perpetrators, it was evident that the whole scheme was

done wilfully and intentionally and for the purpose of producing mental pain and humiliation. Judgment in behalf of the plaintiff was sustained.

In Stiles v. Morse, 123 N. E. 615 (Mass.), action was brought to recover damages for an unlawful attempt to remove plaintiff from office. As to the right to recover for mental suffering, the court said:

"The rule is well settled, however, that if the natural consequence of the wrongful act, done willfully or with gross negligence, is mental suffering to the plaintiff, then that element may be considered in assessing damages."

In Gadbury v. Bleitz, 233 Pac. 299 (Wash.), the plaintiff had engaged the defendant as an undertaker to conduct the funeral of plaintiff's son and cremate the body. It appears that some fifteen months prior to this time the plaintiff's son-in-law had died and the defendant had had charge of that funeral. About two weeks after the funeral of the son of plaintiff the defendant sent an agent to the plaintiff's home, who told her that defendant was holding the body of the son and would continue to hold it until the bill for the son-in-law's funeral had been paid. The plaintiff suffered mental pain from this act. The court recognized the distinction between an action founded on negligence and one founded on willful wrong, saying:

"However, we have adopted the rule that if such suffering is the direct result of a willful wrong as distinguished from one that is merely negligent, then there may be a recovery."

In Lesch v. Great Northern Ry. Co., 106 N. W. 955 (Minn.), the court considered a case where, without legal right, the agents of the defendant entered the home occupied by the plaintiff and searched the same in her presence. They made no threats against her and did not offer any violence to her person or use violent or improper language to her. The plaintiff, however, became frightened and suffered physical and mental pain and anguish. The court held that the house "was her homestead, and she had an interest therein and the same right to its peaceful and quiet enjoyment as her husband had. Any unlawful or wanton invasion of, or interference with, such right would be a legal wrong against her within the meaning of the rule, which is to

be liberally construed and applied in cases where the defendant's acts are wanton and ruthless." The court cites with approval Watson v. Dilts, supra.

In May v. Western Union Telegraph Co., 72 S. E. 1059 (N. C.), the servants of the defendant had a lawful right to enter upon land occupied by the plaintiff, and while there they indulged in loud, profane, and boisterous language, sang lewd and vulgar songs, and yelled at the plaintiff. Plaintiff suffered mental distress and impairment of her health by reason of such conduct. The court held that the plaintiff could recover for the "wilful tort."

In Rogers v. Williard, 223 S. W. 15 (Ark.), the court considered a case where the defendant entered upon premises occupied by plaintiff and her husband, and wilfully and wantonly threatened to kill the husband, flourishing a pistol. The wife, who was present, suffered physical and mental pain, for which action was brought. A demurrer to the petition was sustained by the lower court and reversed on appeal. The court cites with approval Watson v. Dilts, supra.

In Whitsel v. Watts, 159 Pac. 401, the Supreme Court of Kansas said:

"Although the authorities are in conflict as to injuries resulting from fright where fright is caused by a merely negligent act, there is general agreement in the cases that a recovery may be had where the injury results from fright caused by a willful wrong or an act so grossly negligent as to show utter indifference to consequences."

In Jeppsen v. Jensen, 155 Pac. 429, the Supreme Court of Utah recognized the difference between an act of negligence and one that is willful and wanton, and permitted recovery in the latter case, citing with approval Watson v. Dilts, supra.

In Wilkinson v. Downton, 2 Q. B. 57 (1897), the defendant falsely and wilfully represented to the plaintiff that her husband had been severely injured and was lying in a hospital. Plaintiff sued to recover for the nervous shock resulting from the act of the defendant, and recovery was allowed. See, also, Janvier v. Sweeney, 2 K. B. 316 (1919.)

In 8 R. C. L., p. 531, the rule is thus stated:

"In cases of willful and wanton wrongs and those committed

1312

with malice and an intention to cause mental distress, damages are, as a general rule, recoverable for mental suffering even without bodily injury, and though no pecuniary damage is alleged or proved.''

We might extend the citation of authorities.

The rule seems to be well established that, where the act is willful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results. In such a case the door to recovery should be opened but narrowly and with due caution. A creditor or his agent has a right to urge payment of a just debt and to threaten to resort to proper legal procedure to enforce such payment. In this case the jury could well find that appellants exceeded their legal rights, and that they *wilfully* and *intentionally* sought to produce mental pain and anguish in the appellee, and that the natural result of said acts was to produce such mental pain and anguish.

We are constrained to hold that the appellee pleaded a cause of action and that the evidence was sufficient to sustain the verdict.

The judgment is affirmed.

WAGNER, C. J., STEVENS, DE GRAFF, MORLING, ALBERT, and KINDIG, JJ., concur.